UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC D. SALES,

                Plaintiff,

v.                                                      Case No. 23-cv-397-pp

CLYDE JOHNSON, *et al*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 21) UNDER 28 U.S.C. §1915A**

On March 11, 2024, the court denied without prejudice the plaintiff's motion to amend his complaint, but ordered that by April 12, 2024, he could file an amended complaint that complied with the instructions in the March 11, 2024 order. Dkt. No. 20. On March 20, 2024, the court received the plaintiff's amended complaint. Dt. No. 21. This order screens that amended complaint.

**I.    Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

As the court explained in the previous screening order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

1

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint, like the original, names Racine Correctional Institution correctional officer Clyde Johnson as a defendant. Dkt. No. 21 at 1.

It adds as a defendant Jason D. Wells, the Warden at Racine, where the plaintiff previously was incarcerated. Id. at 1–2.

The plaintiff begins by restating his allegations against Johnson. Id. at 2–3. He alleges that at around 2:45 p.m. on May 9, 2021, he was using the bathroom in his cell when Johnson opened the cell door and told the plaintiff and his cellmate to come out. Id. at 2. The plaintiff says he finished in the bathroom and flushed the toilet, but that Johnson "said [the plaintiff] was putting something down the toilet." Id. Johnson then came into the cell, elbowed the plaintiff in the neck, grabbed him by the sweatshirt and threw him against the wall. Id. at 2–3. The plaintiff says he bumped his head as Johnson was "trying to drag [him] out [of the] cell. Id. at 3. The plaintiff says he asked Johnson, "why are you doing this to me?" Id. He claims that Johnson had no reason to rush into the cell while he and his cellmate were inside, and he alleges Johnson did so "without backup." Id.

The plaintiff says that neither he nor his cellmate were "in any medical harm," and he asserts that the "assault was a form of harassment and a[n] opportunity to retaliate against" him because Johnson "failed in his prior attempt to find drugs while searching [his] cell." Id. The plaintiff says he was placed in segregation ("the hole") for the incident, which "set [him] back with P.R.C. and good time credits." Id. He says he also "lost [his] minimum custody," which kept him from obtaining an institutional job about a year and a half earlier and cost him the wages he would have earned. Id.

The plaintiff asserts that Johnson filed a conduct report "but did not mention the attack or entering [the] cell." Id. The plaintiff wrote to then-Deputy Warden Wells "about the attacke [sic] and altercation and to look at the camer's [sic]" to see Johnson enter the cell and attack the plaintiff. Id. at 3–4. Wells told

3

the plaintiff that "he would be looking into this matter." Id. The plaintiff then wrote to Security Director O'Neill (not a defendant) and asked her how he could "go about pressing charges on" Johnson for the alleged attack. Id. O'Neill wrote back to the plaintiff and told him, "this matter is being looked at very close." Id.

The plaintiff says that after he wrote to Wells and O'Neill, Wells "intentionally delay[ed] [his] appeal of [his] contested hearing form," which the plaintiff says he filed on May 30, 2021 and which Wells received on June 1, 2021. Id. He says that Wells did not "ma[k]e a decision" until October 20, 2021, which the plaintiff says was "well pas[t] [his] 60 day due process deadline." Id. He also alleges that his appeal "'somehow' got missed placed [*sic*]." Id. He says the misplacement of his appeal violated his due process rights, and he asserts that it happened because he contested his conduct report by asking Wells to look at the video footage of the incident. Id. at 4–5. He claims that Wells was "protect[ing] his coworker by failing to intervene." Id. at 5.

The plaintiff alleges that on September 14, 2022, Wells sent a memorandum telling the plaintiff that the institution was "unable to locate the appeal which [he] submitted." Id. The plaintiff says he had to resubmit his appeal of his conduct report. Id. He alleges that on January 24, 2023, after filing several institutional complaints, the Office of the Secretary "determined that the conduct report should be expunged due to the lost conduct report appeal and the resultant lengthy delay in responding to it." Id. The plaintiff alleges that the delay led to him serving 120 days in the Restricted Housing Unit "for a violation [he] didn't do." Id. He says it also delayed his "process to petition the Court and preserve relev[a]nt evidence." Id. He alleges that Johnson's use of excessive force and the resulting due process violation altered his prison custody level from low to high for a year and a half. Id. He reiterates

that this higher custody level delayed his transfer to Felmers O. Chaney Correctional Center (FCCC), where he now is incarcerated, and his ability to seek work release "to obtain a job on the street not a prison." Id. at 5–6. The plaintiff says he "pay[s] taxes and file[s] W2 taxes on his money, causing [him] to be deprived of [his] property which is [his] money from work release, also [his] liberty interest to get out of prison eairly [sic]." Id. at 6.

The plaintiff seeks compensatory and punitive damages of at least $1 million against each defendant. Id. at 7. He also seeks at least $1 million against each defendant for "pain and suffering and any future health problem's [sic]." Id. He seeks an additional $500,000 from each defendant for his "emotional distress and loss [sic] wages." Id. Last, he asks the court to take jurisdiction over his "state claim that [he] filed on Notice of Injury on [sic]." Id.

    C.    <u>Analysis</u>

The court explained in the first screening order that the plaintiff had sufficiently stated a claim of excessive force against Johnson under the Eighth Amendment. Dkt. No. 6 at 4–5. For the same reasons the court previously explained, the plaintiff's restated allegations against Johnson state an Eighth Amendment claim of excessive force.

The court also explained in the first screening order that the plaintiff's allegations about his lost good-time credit and the opportunity to work a prison job because of the false conduct report filed against him based on Johnson's attack could suggest a claim under the Due Process Clause of the Fourteenth Amendment." Id. at 5. The court did not allow the plaintiff to proceed on this claim because it was "not clear whether the plaintiff wants to proceed on this claim and, if he does, against whom." Id. The plaintiff filed his amended complaint to add this as a claim against Warden Wells.

But the court also previously explained that the plaintiff's "allegations would not state a claim for a Fourteenth Amendment due process violation." Id. The court explained that the plaintiff "has no Fourteenth Amendment property or liberty interest in a prison job, so the inability to obtain a prison job because of the conduct report does not state a due process claim." Id. at 5–6 (citing Olson v. Humphreys, Case No. 07-C-682, 2007 WL 2570231, at *4 (E.D. Wis. Aug. 30, 2007); Harris v. Fleming, 839 F.2d 1232, 1237 n.5 (7th Cir. 1988); and Garza v. Miller, 688 F.2d 480, 485-86 (7th Cir. 1982)). The plaintiff also does not "have a due process right not to be charged with or convicted of a prison disciplinary offense or to remain free from disciplinary segregation (the plaintiff's claim that he was sent to 'the hole')." Id. at 6 (citing Wolff v. McDonnell, 418 U.S. 539, 564–71 (1974); and Sandin v. Conner, 515 U.S. 472, 484 (1995)). The court explained that the plaintiff could "challenge the *process* (or lack of process) afforded him before and during a disciplinary hearing." Id. (citing Wolff, 418 U.S. at 563–66). But the plaintiff still has not challenged the process afforded him during or before his disciplinary hearing; he challenges only the delay in his *appeal* from his disciplinary conviction. The plaintiff cannot proceed on a claim related to his appeal because there is no Fourteenth Amendment right to appeal a prison disciplinary conviction. See Lowe v. Stockey, 36 F. App'x 353, 360 (10th Cir. 2002) (citing Wolff, 418 U.S. at 564–66) ("[T]he Supreme Court has already determined that there simply exists no due process right to such an appeal."). The plaintiff also "has no substantive due process right to an early release from prison." Toney-El v. Franzen, 777 F.2d 1224, 1227 (7th Cir. 1985).

The plaintiff also alleges that because Wells delayed his appeal from the disciplinary conviction, he spent 120 days in the RHU, was delayed in

preserving evidence for his excessive force claim against Johnson and suffered an increase in his prison custody level. He says the increase in his custody level delayed his transfer to FCCC and his ability to seek work release, deprived him of his property (the money he could have made on work release) and extended his time in prison. The plaintiff may have a claim related to Wells allegedly and intentionally delaying his appeal of the allegedly false conduct report, which the plaintiff says "set [him] back" with good time credits and extended his release date. See Wolff, 418 U.S. at 558; Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001). The court will allow the plaintiff to proceed on this limited Fourteenth Amendment claim.[1]

The court will not allow the plaintiff to proceed on any other claim under the Fourteenth Amendment. The plaintiff has no property or liberty interest in participating in a work release program, so the delay he faced before beginning work release at FCCC did not violate the Constitution. See DeTomaso v. McGinnis, 970 F.2d 211, 213 (7th Cir. 1992); Grisle v. Jess, Case No. 17-cv-858-pp, 2017 WL 3274214, at *3 (E.D. Wis. Aug. 1, 2017). The plaintiff also has no right to transfer to a particular prison, so he has not stated a claim regarding the delay in his transfer to FCCC. See Reimann v. Frank, 397 F. Supp. 2d 1059, 1078 (W.D. Wis. 2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). The plaintiff has not stated a claim regarding his 120 days in the RHU because he does not have a right to remain in the general prison

---

[1] The plaintiff says that the Office of the Secretary concluded that his disciplinary conduct report *should be* expunged because of the appeal delay, but he does not allege that his conviction *has* been expunged. This may suggest that he is barred from seeking damages in this lawsuit based on the allegedly false disciplinary report. See Edwards v. Balisok, 520 U.S. 641, 646 (1997); Heck v. Humphrey, 512 U.S. 477, 486 (1994). This order does not preclude the defendants from later raising a defense to the plaintiff's Fourteenth Amendment claim against Wells based on Heck.

population, see Montgomery, 262 F.3d at 644; and he has not alleged that the conditions in the RHU imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484.

The plaintiff also newly asserts that Johnson assaulted him in retaliation against the plaintiff. To state a claim of retaliation under the First Amendment, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783). The plaintiff has not alleged that he engaged in any protected activity that led to Johnson's use of excessive force. He says Johnson previously and unsuccessfully had searched his cell for drugs and suggests that Johnson assaulted him in retaliation for not finding drugs during that previous search. The plaintiff does not allege that he filed an institutional complaint against Johnson based on the previous search and that Johnson assaulted him for filing that complaint, which could form the basis of a retaliation claim. See Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020). Johnson's alleged motive for assaulting the plaintiff may support the plaintiff's excessive force claim, but it does not support a retaliation claim. The court will not allow the plaintiff to proceed on a First Amendment claim against Johnson.

Finally, the plaintiff again asks the court to take supplemental jurisdiction over his state-law claim. See Dkt No. 6 at 5. But the plaintiff does not say what his state-law claim is. He says he filed a Notice of Injury about this claim, but he did not attach the Notice of Injury to his amended complaint. That document is not in the record, and the court does not have access to it. The court previously determined that the plaintiff sought to proceed on a state-

8
Case 2:23-cv-00397-PP    Filed 04/30/24    Page 8 of 10    Document 22

law claim of negligence based on his allegations in the original complaint "that Johnson was 'negligent . . . to [his] health . . . .'" Id. (quoting Dkt. No. 1 at 2–3). But the amended complaint does not restate this allegation or state a potential negligence claim against Johnson. As the court explained to the plaintiff in the previous order denying his motion to amend,

> An amended complaint must be complete by itself because it 'supersedes all previous complaints and controls the case from that point forward.'" (quoting Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999) (citing Carver v. Condie, 169 F.3d 469, 472 (7th Cir. 1999)). That means the plaintiff *must reallege any facts or claims from his original complaint in an amended complaint*; he may not refer to or rely on his previous complaint. If he does not reallege those facts or claims, the court considers the plaintiff to have abandoned them and will allow him to proceed only on the facts and claims alleged in the amended complaint.

Dkt. No. 20 at 3 (emphasis added). The amended complaint does not reallege any facts supporting a state-law claim of negligence. It says only that the plaintiff filed a Notice of Injury for an unspecified state-law claim. Because the amended complaint does not reassert the plaintiff's state-law negligence claim against Johnson, there is no state-law claim over which the court can exercise supplemental jurisdiction. The court will deny the plaintiff's request to exercise supplemental jurisdiction over his purported state-law claim. He must pursue that claim, whatever it is, in state court.

## II.  Conclusion

The court **ORDERS** that the amended complaint is the operative complaint moving forward. Dkt. No. 21.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Clyde Johnson and Jason D.

Wells at Racine Correctional Institution. Under the informal service agreement, the court **ORDERS** the defendants to respond to the amended complaint within sixty days.

Dated in Milwaukee, Wisconsin this 30th day of April, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**